UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH RAY HARRIS,

    Petitioner,

vs.

BEN CURRY, Warden,

    Respondent.

    No. C 08-1530 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition will be denied.

## BACKGROUND

Petitioner pled guilty in Sacramento County Superior Court to second degree murder. In 1987 he was sentenced to fifteen years to life in prison. On November 2, 2006, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole.

## DISCUSSION

**I.     Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.* Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless

2

objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**II.    Issues Presented**

Petitioner contends that (1) the Board violated his due process rights by not performing the plea agreement provision which allegedly required it to set a term of incarceration according to state regulations (the "matrix"), and violated the plea agreement by recharacterizing his crime as first-degree murder; (2) there was no evidence that he was a threat to society at the time of the hearing; and (3) the denial of parole based on the nature of his offense violated due process.

Among other things, respondent contends that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will addressed first.

**A.    Respondent's Contentions**

In order to preserve the issues for appeal respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit. *See Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123,

3

1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.").

**B.     Petitioner's Claims**

**1.     Violation of Plea Agreement**

Petitioner contends that the plea bargain required that his sentence be set according to the "matrix," regulations that give the Board guidance in setting terms of incarceration for indeterminate prisoners.  He has provided no evidence whatever that the plea bargain contained a provision that the time petitioner would serve would be calculated according to the matrix.  Furthermore, the California Supreme Court has held that the Board has no duty to apply the matrix when it has determined that a prisoner is unsuitable for parole.  *In re Dannenberg*, 34 Cal. 4th 1069, 1071 (Cal. 2005).  Petitioner thus cannot argue that California law requires use of the matrix and is incorporated into the plea agreement by implication, because California law requires no such thing.

Petitioner also contends that the plea was to second degree murder, not first degree, and that the Board violated the plea agreement by noting that the offense was committed by "lying in wait," a first degree special circumstance.

This claim is without merit, first, because petitioner has provided no evidence of anything in the plea agreement that prevents the parole board from considering any factual circumstance of the offense.

In addition, the Board was not treating petitioner as if he had been convicted of first degree murder.  He was convicted of second degree murder and sentenced to a prison term of fifteen years to life.  First degree murder is punishable by death, life without parole, or a term of twenty-five years to life.  Cal. Penal Code § 190(a).  In California a sentence of years-to-life is a life sentence until such time as a prisoner is deemed suitable for parole, *Dannenberg*, 34 Cal. 4th at 1083-84, so in fact the basic sentence for second degree murder – fifteen years to life – is indistinguishable from the mildest sentence for first degree

4

1 murder, once the minimum parole date has passed and when the prisoner has not been
2 found suitable for parole.  That is, petitioner was not being treated as if he had been
3 convicted of first degree murder.
4     Petitioner's claims that the Board violated his plea agreement are without merit.
5     **2.     "Some Evidence"**
6     Petitioner contends that denial of parole was not supported by "some evidence" and
7 thus violated his due process rights.
8     The Ninth Circuit has held that it violates due process if parole is denied without
9 "some evidence in the record" to support the denial or if the denial is "otherwise arbitrary."
10 *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used
11 for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985));
12 *McQuillion*, 306 F.3d at 904 (same).  Ascertaining whether the some evidence standard is
13 met "does not require examination of the entire record, independent assessment of the
14 credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is
15 whether there is any evidence in the record that could support the conclusion reached by
16 the [parole] board." *Hill*, 472 U.S. at 455-56; *see Sass*, 461 F.3d at 1128.  "[The] some
17 evidence standard  is minimal, and assures that 'the record is not so devoid of evidence
18 that the findings of the disciplinary board were without support or otherwise arbitrary.'"
19 *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).
20     It is now established under California law that the task of the Board of Parole
21 Hearings and the governor is to determine whether the prisoner would be a danger to
22 society if he or she were paroled.  *See In re Lawrence,* 44 Cal. 4th 1181 (2008).  The
23 constitutional "some evidence" requirement therefore is that there be some evidence that
24 the prisoner would be such a danger, not that there be some evidence of one or more of
25 the factors that the regulations list as factors to be considered in deciding whether to grant
26 parole.  *Id.* at 1205-06.
27     The following description of the crime was read into the record at the hearing:
28         On October 6, 1986 . . . while Heidi . . . Homuth . . . was at work,

> Kenneth Harris removed the window screen and entered through the bedroom window into Heidi's apartment. Harris wait[ed] until 1730 hours when Heidi Homuth returned to her home from work. After several hours of arguing, Harris wrapped his two hands around Heidi's neck and started choking the victim until she laid [sic] on the floor, becoming unconscious. When the victim started regaining consciousness, Harris took a cord, looped it around the victim's neck, and strangled her from behind until she again became unconscious. When the victim started regaining consciousness for the second time, Harris sat on the victim's chest, placed a heavy amount of pressure on a large candlestick holder over her throat, until she died.

Pet, Ex. A (transcript of hearing) at 9-10.

The nature of the offense was one basis for the Board's conclusion that petitioner would be a danger to society if paroled. At the time of the hearing in 2006 petitioner was approximately forty-six years old and had served about nineteen years on his sentence of fifteen years to life. The amount of time petitioner had served at the time of the hearing was not so long that the nature of the offense had lost all predictive value. Petitioner's conduct in nearly killing Heidi twice, then allowing her to recover consciousness before strangling her again, was particularly vicious and cruel. The court concludes that the circumstances of the offense were still entitled to significant weight in determining whether petitioner would be a danger to society if paroled, and that the circumstances of the offense are sufficient in themselves to constitute "some evidence" to support the denial. In addition, there was evidence that in 2005, the year before the hearing, petitioner had received a write-up for the minor rule violation of being out of bounds. *Id.* at 25. *See Rosas v. Nielsen*, 428 F.3d 1229, 1232–33 (9th Cir. 2005) (facts of the offense and psychiatric reports about the would-be parolee sufficient to support denial), which also is evidence to support the denial.

Because there was no constitutional violation, the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 3. "Biggs Claim"

In a line of relatively recent cases the Ninth Circuit has discussed the constitutionality of denying parole when the only basis for denial is the circumstances of the

offense. *See Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003).

In *Biggs* the court said that it might violate due process if the Board were to continue to deny parole to a prisoner because of the facts of his or her offense and in the face of evidence of rehabilitation. 334 F.3d at 916-17. No legal rationale for this statement was provided, and it was unclear whether the court was suggesting that the continued denial of parole would be a new sort of due process violation or whether it was simply expressing the thought that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled. This ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54. It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would be fundamentally unfair and violate due process. As the dissenters from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might be dictum is controlling authority if the issue was presented and decided, even if not strictly "necessary" to the decision. *Irons v. Carey*, 506 F.3d 951, 952 (9th Cir. Nov. 6, 2007) (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005)).

Depending on whether the discussion of dictum in the dissent from denial of rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized that due process right, which for convenience will be referred to in this opinion as a "*Biggs* claim." Here, petitioner's fourth issue is a "*Biggs* claim," in that he contends that simply using the circumstances of his offense as grounds for denial for the second time violates due process, separate from his "some evidence" claim, which is discussed above.

Petitioner has failed to establish the predicate for his *Biggs* claim. For one thing, petitioner's parole was not denied solely because of the circumstances of his offense, but

United States District Court
For the Northern District of California

also because of his disciplinary history.  And assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim."  The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  March 31, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.08\HARRIS1530.RUL.wpd